the sound condition in which you see the top before you, than in the fragments after being torn up. It is. for you to say what the object of tearing these tops up was. If you find they were torn for the purpose of avoiding duty, you will say so in answering the question put by the agreement. If you find that they were not torn up dishonestly, that they were not torn up with a view to evading duty, you will then say so.

I disaffirm the first point presented by the defendant. I cannot affirm any of the points in terms, and I think they are sufficiently answered in what is said in the general charge. The verdict was in favor of the plaintiff, and the jury found as a special fact that the article was broken into the form in which it was imported for the purpose of evading the duty.

---

UNITED STATES v. PHILLIPS.[1]

*(District Court, E. D. Pennsylvania. May 7, 1891.)*

CUSTOMS DUTIES—REAPPRAISEMENT—RECOVERY OF BALANCE DUE.

Heavy goods were appraised on the wharf and delivered to the importer upon payment of duty as invoiced, and the execution of a bond to return the goods, if required, within 10 days, no samples being retained, and no demand within the 10 days being made. Afterwards the valuation was raised, and an additional duty was assessed upon the goods, by the assessor's return, and the importers notified thereof, who made a demand for a reappraisement. A merchant appraiser having been appointed, and not reporting, and the general appraiser having stated that, owing to the lack of samples, a reappraisement was impossible, a liquidation was made in accordance with the original return. *Held,* that the liquidation was invalid, and no suit was maintainable for balance shown thereby.

At Law.

*Assumpsit* by the United States against Ferdinand Phillips *et al.*, trading as Phillips, Townsend & Co., to recover the sum of $2,224.75 for an alleged balance of customs duties due upon an importation of steel wire rods, imported into the port of Philadelphia upon October 3, 1889. The merchandise consisted of 9,663 coils and 9,842 coils, and were entered at the valuation of $14,825, at 45 per cent. *ad valorem.* Upon October 7, 1889, the entry was made and the estimated duties paid and a permit to deliver the goods after appraisement and examination given to the defendants' custom-house broker. The entry and invoice under treasury regulation No. 449, relating to bulky articles was indorsed that the examination should be made upon the wharf, and no packages were specified as examination packages. Upon receipt of the invoice at the appraiser's office, examination of the goods was made, and subsequently upon October 14, 1889, upon presentation of the permit to deliver, all of the goods passed into the defendants' possession. At this time the usual bond for the return of the goods within 10 days after appraisal, if

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.

required by the collector, was executed by the defendant. No request for the return of the goods was made within the 10 days, and they were afterwards consumed in the importer's factory. Upon October 30, 1889, the appraiser returned upon the lot of 9,663 coils an advance in value of 15 6-10 per cent., and under Rev. St. § 2900 an additional duty at 20 per cent. was thereupon exacted, amounting to the sum of $2,224.75 for which the suit was brought. Upon November 4, 1889, notice of the additional duty exacted was sent to the importer from the custom-house pursuant to treasury regulation 462, and upon the same day notice was received from the importer claiming reappraisement under Rev. St. § 2930. The collector in accordance with treasury regulations asked for a special report of reappraisement by the appraisers, which report was made November 7, 1889, affirming the former appraisement. The collector after successively appointing several merchants as merchant appraisers, all of whom declined to serve, selected a merchant who consented to serve, and February 21, 1889, was fixed for the merchant appraisement. No report was ever signed by the merchant appraiser, but upon February 21, 1889, the general appraiser wrote to the collector that a reappraisement was impossible because of the importer's omission to keep samples of the importation, and upon March 14, 1890, a liquidation in accordance with the examiner's original return was made by the collector of the port, showing the balance to be due for which the suit was brought. Upon March 22, 1890, a protest by the importer was filed, claiming that no advance in value could be made which does not carry the right to a reappraisement pursuant to Rev. St. § 2930; that in order that a valid reappraisement could be made samples of the goods must be then and there examined; that it was the government's duty to retain and preserve samples, and that inasmuch as the importer had requested a reappraisement under Rev. St. § 2930, it was the duty of the government officials to take every step necessary in order to effectuate a valid reappraisement, and that whether the goods were to be examined upon the wharf or not, it was the duty of the collector of the port upon entry thereof, to specify examination packages which should thereupon be retained.

*Wm. Wilkins Carr*, Asst. U. S. Atty., and *John R. Read*, U. S. Atty., contended—

That the permit to deliver all of the goods was issued upon October 7, 1889, at the importer's request, and the inspector, upon presentation of that permit by the importer upon October 14, 1889, had no discretion to return samples for a subsequent reappraisement, and that it was the importer's place to retain samples if thereafter he intended to apply for a merchant's reappraisement under Rev. St. § 2930.

*Frank P. Prichard* and *John G. Johnson*, for defendant.

No liquidation can be made while a merchant appraisement is pending. *Tucker* v. *Kane*, Taney, 146-151. No reappraisement is valid unless made on inspection of the goods or the examination packages. *Greeley* v. *Thompson*, 10 How. 225; *Converse* v. *Burgess*, 18 How. 413; *Iron Co.* v. *Redfield*, 23 Fed. Rep. 650. It was the duty of the collector either to retain examina-

tion packages or to ask for their return, in accordance with the condition of the bond; and if because of his failure to retain them no reappraisement can be had, the additional duties cannot be collected.

BUTLER, J.   Judgment of nonsuit entered.

---

UNITED STATES v. ONE HUNDRED AND TWENTY-NINE BALES OF MER-
CHANDISE.[1]

(*District Court, E. D. Pennsylvania.*   May 12, 1891.)

1. CUSTOMS DUTIES—FORFEITURE—FRAUDULENT VALUATION.
    In an information by the government for the forfeiture of goods on account of fraudulent undervaluation, the burden of proof is on the government to show, first, that the representations made in the invoice, affidavits, etc., were false, and, second, that they were known by the claimant to be so, and were made to defraud the government.
2. SAME—BURDEN OF PROOF.
    Where goods were entered as "cattle hair," and represented to be such by the claimant, the burden of proof in a suit on information to forfeit them for fraudulently designating them as such is on the government, which must show that they are in fact something else, and that the claimant so knew, and entered them as hair to defraud the government.

At Law.

Information for forfeiture under the provisions of section 9 of the act of June 10, 1890, for entry of merchandise by false invoices, affidavits, etc.   Entry was made of 129 bales of so-called "cattle hair" upon August 25, 1890, per steam-ship British Prince by the claimant, and also upon September 22, 1890, per steam-ship Ohio 24 bales of so-called "cattle hair," and afterwards upon October 27, 1890, per steam-ship British Prince 12 bales.   Upon the trial the defendant's books and papers, and the invoices and letters and memoranda concerning the importation from the sellers, Nathan & Co., of Paris, were produced by the defendant Henry Schmidt.   The testimony of the plaintiff tended to show that the prices set down in the invoice at 1 franc, 37 centimes, per kilogram were not the actual prices paid to the seller by the claimant, and that the article was not cattle hair but wool, and that the oath was false as made by the seller that there was no other invoice than the consular invoice in existence.   It was also shown that in the case of one of the importations the merchandise was sold upon arrival under the name of "pulled wool" and not cattle hair, and in the same way in which wool is sold with the tare off, and not gross for net, as is the usage in regard to hair.   Testimony was produced by experts that the article was bought, sold, and used in trade as wool.   The testimony of the defendant tended to show that the price stated in the invoice was the actual cost of the goods at the place of purchase exclusive of charges, while

---

[1] Reported by Mark Wilks Collet, Esq., of the Philadelphia bar.